**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**LAMAR RAY STEELE, JR.,**

     **Plaintiff,**

     **v.**                       **CASE NO. 23-3192-JWL**

**RONALD L. DAVIS, et al.,**

     **Defendants.**

**MEMORANDUM AND ORDER**
**TO SHOW CAUSE**

Plaintiff Lamar Ray Steele, Jr. is hereby required to show good cause, in writing, to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein. Plaintiff is also given the opportunity to file a proper amended complaint to cure the deficiencies.

**1. Nature of the Matter before the Court**

Plaintiff brings this *pro se* civil rights complaint under 28 U.S.C. § 1331 and *Bivens*[1] based on conditions while housed at the United States Penitentiary in Leavenworth, Kansas ("USPL"). Plaintiff is a pretrial detainee and proceeds *in forma pauperis*.

Plaintiff alleges in his Complaint that he arrived at USPL in the custody of the United States Marshal Service on April 6, 2023. He was assessed by NPN Brooke Crane, who discontinued Plaintiff's medication for high blood pressure and anxiety. Plaintiff alleges that she took this action without conducting any tests or documenting his blood pressure, despite the fact that Plaintiff is a chronic care detainee with a documented history of high blood pressure and had been taking the medications for years. Plaintiff states that Crane's action was authorized by

---

[1] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Medical Director Clark.  Since the medication was discontinued, Plaintiff has had his blood pressure checked only once or twice and has not received a check up for his chronic health issues. Plaintiff alleges that he has suffered harm to his internal organs as a result of his medication being stopped, as well as headaches, chest pains, accelerated heart rate, and anxiety.

Plaintiff further complains of the conditions of his confinement at USPL.  He alleges that he is housed with convicted prisoners and inmates he is "flagged against."  He asserts there are no ladders on the bunks, and no lockers or storage space in the rooms.  The lack of lockers resulted in Plaintiff's shoes being ruined when a neighboring inmate flooded the unit by stopping up his toilet.  In addition, the inmates were not given cleaning supplies to disinfect their rooms after the flood.  Also, the inmates were not given new laundry even though their belongings were soaked.

Plaintiff states that he complained of black mold in the rooms and showers and the fact that pretrial detainees are subjected to the same rules as convicted inmates, such as 300 minutes a month telephone time and being locked in their rooms for 19-24 hours a day.  Plaintiff alleges that when he is allowed out of his room, there are close to 100 other men out at the same time, all wanting to use the three computers for legal research and the two computers available for recreation.  He further states that there are no typewriters or printers available for inmate use.

Plaintiff also claims that pretrial detainees are denied visitors because they do not yet have a pre-sentencing report ("PSR") as they have not even had a trial.  Further, he claims there are no newspapers, indigent detainees are not provided with headphones to hear the televisions, and the rooms have no panic buttons, meaning a prisoner has to bang, kick, yell, and scream to get the attention of staff.  Plaintiff further claims that all of his legal mail has been opened.

Plaintiff asserts that he has complained of all of these issues by submitting BP-9s, 10s, and 11s, but he has received no response to any of them.  When he complained to the Marshal Service, he was told that they have no say over what happens to him while at USPL.

Since complaining, Plaintiff alleges that he has become a target.  He describes an incident where Counselor Toot had him sign for certified mail that included photographs.  Toot questioned why Plaintiff was receiving photos of white women.  Plaintiff states that he is fifty percent white so he has white and mixed race relatives.  Plaintiff further alleges that he managed to get his children's mother approved as a visitor, and she visited once before she was removed from his list even though he had not broken any rules or been in trouble.  Plaintiff describes another incident occurring on July 19, 2023, when visitors from "Region" walked through the A-1 cell house.  A woman in the back of the group stopped and talked to Plaintiff.  She saw the broken sink in his room that is "jimmied" to drain into the toilet since the pipes are clogged.  Plaintiff told her about the plumbing as well as other issues.  As soon as she left, Case Manager Gulley and Counselor Collins came to his door.  Gulley called him a bitch, told him he now has "nothing coming from him," then told the unit that "because of Steele, you guys are fucked."  (Doc. 1-1, at 9).

Plaintiff brings claims for violation of his rights under the First, Fifth, and Fourteenth Amendments.

Plaintiff names the following defendants: Ronald L. Davis, Director, U.S. Marshal Service; D. Hudson, Warden, USPL; (FNU) Grecco, UTM, USPL; Michael Naller, North Central FBOP Regional Director; (FNU) B., USP Psychologist; (FNU) Gulley, Counselor, USPL; (FNU) Toot, CM, USPL; Brooke Crane, NPN, USPL; and Jason Clark, Medical Director, USPL.  Plaintiff seeks injunctive relief, as well as compensatory and punitive damages of $100,000 from each defendant.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)– (2).

A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted).  The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff

believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### A. Availability of a *Bivens* Claim

*Bivens* and its progeny permit a damages claim against a federal officer in his individual capacity for a deprivation of certain constitutional civil rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) ("In *Bivens* - proceeding on the theory that a right suggests a remedy – [the United States Supreme] Court 'recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.'") (quoting *Corr. Servs.*

*Corp. v. Malesko*, 534 U.S. 61, 66, 68 (2001)).  The Supreme Court "held that, even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures" under the Fourth Amendment.  *Ziglar v. Abbasi*, 582 U.S. 120, 137 S. Ct. 1843, 1854, 198 L.Ed.2d 290 (2017).  Since *Bivens*, the Supreme Court has recognized a *Bivens* remedy in *only two* other types of cases: Fifth Amendment violations of the equal protection component of the Due Process Clause (*see Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979)), and Eighth Amendment violations of the Cruel and Unusual Punishment Clause (*see Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)).

The Supreme Court has made it clear that expanding the *Bivens* remedy beyond the already recognized contexts is a "disfavored judicial activity." *Abbasi*, 137 S. Ct. at 1857 (quotations omitted).  Therefore, a plaintiff may proceed on a *Bivens* action only if the court determines the action survives a two-part inquiry.  First, the court must determine whether the claim arises under a new *Bivens* context.  If not, the claim may be brought under *Bivens*.  However, if the claim involves a new context, the court may create a new *Bivens* remedy only if there are no special factors counseling hesitation against the creation of such a remedy.  *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007).

As to the first part of the inquiry, the test is whether "the case is different in a meaningful way from previous *Bivens* cases decided by [the United States Supreme] Court[.]" *Id.* at 1859.  In other words, courts should determine whether the claims at issue differ meaningfully from "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary [based on her gender]; and a claim against prison officials for failure to treat an inmate's asthma [resulting in his death]." *Id.* at 1860.  Therefore, it

is not merely a question of whether a plaintiff's claim arises under the Fourth, Fifth, or Eighth Amendment. "A claim may arise in a new [*Bivens*] context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez v. Mesa*, ⎯⎯ U.S. ⎯⎯, 140 S. Ct. 735, 743, 206 L.Ed.2d 29 (2020).

Plaintiff brings essentially three claims. The first is an Eighth Amendment claim based on an allegation of inadequate health care.[2] The Court finds at this preliminary screening stage that this claim does not involve a new context and therefore may be brought under *Bivens*.

Plaintiff's second claim is also an Eighth Amendment claim, but it is based on the conditions of Plaintiff's confinement at USPL. The Court finds that this claim is not an appropriate *Bivens* claim and is therefore subject to dismissal.

The *Abbasi* Court held that *Carlson* had only recognized an implied damages remedy under the Eighth Amendment for "failure to provide medical treatment." *Abbasi*, 137 S. Ct. at 1859. Hence, an Eighth Amendment conditions of confinement claim involves a new context. Other courts after *Abbasi* have held that *Bivens* will not be extended to "non-medical care conditions of confinement" claims. *See Hormizi v. United States*, No. CIV-22-717-SLP, 2022 WL 19004885, at *1–5 (W.D. Okla. Oct. 14, 2022), *report and recommendation adopted sub nom. Hormozi v. United States*, No. CIV-22-717-SLP, 2023 WL 2160852 (W.D. Okla. Feb. 22, 2023); *see also Menard v. Mansi*, No. 21-CV-2130, 2021 WL 2156366, *4 (E.D. Pa. May 27, 2021) (citing various judicial decisions wherein courts declined to extend *Bivens* to Eighth Amendment conditions of confinement claims); *Hill v. Lappin*, 561 F. Supp. 3d 481, 487 (M.D. Pa. 2021) (noting that

---

[2] Because Plaintiff is a pretrial detainee, his claims are governed by the Due Process Clause rather than the Eighth Amendment. But "[t]he distinction effectively is immaterial . . . because '[u]nder the Fourteenth Amendment due process clause, pretrial detainees are entitled to the degree of protection against denial of medical attention which applies to convicted inmates under the Eighth Amendment.'" *Thomas v. Guffey*, 367 F. App'x 957, 959 n.2 (10th Cir. 2010) (quoting *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009), *cert. denied* 558 U.S. 877 (2009).

although courts "[i]n the wake of *Abbasi*" initially did not *sua sponte* consider whether conditions-of-confinement claims remained viable, "[a]s the dust settles ... and courts begin to appreciate *Abbasi's* watershed scope, the better-reasoned authority has declined to recognize a *Bivens* remedy for Eighth Amendment conditions-of-confinement ... claims."); *Richardson v. United States*, No. CIV-18-763-D, 2019 WL 4038223, at *7 (W.D. Okla. June 28, 2019) (finding that an Eighth amendment conditions of confinement claim constituted a new context under *Bivens*).

The Court must next consider whether there are special factors weighing against extending a *Bivens* remedy to conditions of confinement claims. The Supreme Court has said that "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Abbasi*, 137 S. Ct. at 1858. "[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not." *Id.* at 1863. Likewise, the Tenth Circuit has stated that "the presence of an alternative cause of action against individual defendants provides sufficient redress such that a *Bivens* cause of action need not be implied." *Crosby v. Martin*, 502 F. App'x 733, 735 (10th Cir. 2012) (unpublished) (citing *Peoples v. CCA Det. Ctrs.*, 422 F.3d 1090, 1102 (10th Cir. 2005)). The Tenth Circuit found that where a plaintiff "has an alternative cause of action against the defendants pursuant to Kansas state law, he is precluded from asserting a *Bivens* action against the defendants in their individual capacities," and he is "barred by sovereign immunity from asserting a *Bivens* action against the defendants in their official capacities." *Crosby*, 502 F. App'x at 735 (citing *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001) (finding that an official-capacity claim "contradicts the very nature of a *Bivens* action. There is no such animal as a *Bivens* suit against a public official tortfeasor in his or her official capacity.")).

Here, Plaintiff could seek redress in state court under Kansas law.  Additionally, the Bureau of Prisons ("BOP") has established an administrative remedy process permitting an inmate to seek review of an issue relating to "any aspect of his/her own confinement."  28 C.F.R. Ch. V, subch. C, pt. 542, subpt. B, §§ 542.10–542.19 (BOP Administrative Remedy Program through which prisoner can seek formal review of any aspect of confinement); 28 C.F.R. § 542.10(a) (explaining the purpose of this program as providing a process through which "an inmate [may] seek formal review of an issue relating to any aspect of his/her own confinement.").

A *Bivens* damages remedy "is not an automatic entitlement ... and in most instances we have found a *Bivens* remedy unjustified."  *Wilkie*, 551 U.S. at 550.  The Court concludes there is no legal basis to recognize a federal claim for damages against Defendants based upon Plaintiff's allegations related to the conditions of his confinement.

Plaintiff's third claim is a First Amendment retaliation claim.  The Court finds that it also is not an appropriate *Bivens* claim and is therefore subject to dismissal.  The Tenth Circuit recently considered the question, relying on *Egbert v. Boule*, __ U.S. __, 142 S. Ct. 1793 (2022) to find there is no *Bivens* remedy for retaliation.  *Silva v. United States*, 45 F.4th 1134, 1140 (10th Cir. 2022).  In *Egbert*, the Supreme Court considered two *Bivens* claims: (1) a Fourth Amendment excessive force claim, and (2) a First Amendment retaliation claim.  *Egbert,* 142 S. Ct. at 1807–08.  The Supreme Court determined that both claims would be expansions of *Bivens* beyond the three previously recognized cases.  *Id.* at 1804, 1807.  The Court emphasized that recognizing a new *Bivens* action is an extreme course of action that "entail[s] substantial social costs." *Id.* (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).  "Federal employees," the Court reasoned, "'face[d with] the added risk of personal liability for decisions that they believe to be a correct response to improper [activity] would be deterred from' carrying

out their duties" if *Bivens* was expanded to cover First Amendment retaliation claims. *Id.* (alterations in original) (quoting *Bush v. Lucas*, 462 U.S. 367, 389 (1983)). The Court was "'convinced' that, in light of these costs, 'Congress is in a better position to decide whether or not the public interest would be served' by imposing a damages action." *Id.* (quoting *Bush*, 462 U.S. at 390).

Plaintiff's claims based on the conditions of his confinement, retaliation, discrimination, or any claim other than his Eighth Amendment medical care claim are subject to dismissal for failure to state a claim under *Bivens*.

## B. Eighth Amendment Deliberate Indifference to Medical Needs Claim

While Plaintiff may have the *Bivens* remedy available for his Eighth Amendment medical claim, his claim has other problems.

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted). Because Plaintiff is a pretrial detainee, his claims are governed by the Due Process Clause rather than the Eighth Amendment. But "[t]he distinction effectively is immaterial . . . because '[u]nder the Fourteenth Amendment due process clause, pretrial detainees are entitled to the degree of protection against denial of medical attention which applies to convicted inmates under the Eighth Amendment.'" *Thomas v. Guffey*, 367 F. App'x 957, 959 n.2 (10th Cir. 2010) (quoting *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009), *cert. denied* 558 U.S. 877 (2009)); *see also Lucas v. Turn Key Health Clinics, LLC*, 58 F. 4th 1127 (1136 (10th Cir. 2023) ("The deliberate indifference standard applies to pretrial detainees . . . through the Fourteenth Amendment.").

The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted). In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

Plaintiff must also satisfy the subjective prong. "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id.* (quoting *Sealock*, 218 F.3d at 1209). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)). "A plaintiff 'need not show that a prison official acted or failed to act believing that harm actually would befall an inmate,' but rather that the official 'merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.'" *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023) (quoting *Farmer*, 511 U.S. at 842, 843 n.8).

A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment. *See Estelle*, 429 U.S. at 106–07; *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (prisoner's right is to medical care—not to type or scope of medical care he desires and difference

of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983); *Handy v. Price*, 996 F.2d 1064, 1067 (10th Cir. 1993) (affirming that a quarrel between a prison inmate and the doctor as to the appropriate treatment for hepatitis did not successfully raise an Eighth Amendment claim); *Ledoux v. Davies*, 961 F.2d 1536 (10th Cir. 1992) (Plaintiff's contention that he was denied treatment by a specialist is insufficient to establish a constitutional violation.); *El'Amin v. Pearce*, 750 F.2d 829, 833 (10th Cir. 1984) (A mere difference of opinion over the adequacy of medical treatment received cannot provide the basis for an Eighth Amendment claim.). "[T]he subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment." *Salary v. Goff*, 572 F. App'x 668, 670 (10th Cir. 2014), quoting *Self v. Crum,* 439 F.3d 1227, 1232 (10th Cir. 2006).

In addition, an inadvertent failure to provide adequate medical care or a negligent diagnosis "fail[s] to establish the requisite culpable state of mind." *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 105–106 (footnote omitted).

The Tenth Circuit recently clarified that under the deliberate indifference analysis, "merely doing *something* (with no reference to the underlying condition) does not necessarily insulate one from liability." *Lucas,* 58 F.4th at 1139. "Instead, a court may need to determine whether there was the functional equivalent of a complete denial of care in light of the specific circumstances." *Id*. (citations omitted).

Here, Plaintiff has difficulty with both the objective and subjective prongs of the deliberate indifference analysis.  He asserts without supporting documentation that he has been diagnosed with high blood pressure and anxiety and has been taking medication for both.  However, neither condition automatically qualifies as a "serious medical need."  Both conditions encompass a spectrum of seriousness.  Plaintiff includes no factual allegations about his blood pressure readings beyond stating he has "high" blood pressure.  He also fails to include anything more than conclusory allegations about *possible* effects of high blood pressure.  The Court is instructed to "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines,* 671 F.3d 1188, 1191 (10th Cir. 2012).  Plaintiff has not plausibly alleged that his blood pressure was a serious medical need, that it created a substantial risk of serious harm that a defendant disregarded, or that Plaintiff's claim involves more than a difference of opinion as to a diagnosis or proper treatment.  It may be that this is a situation where "there was the functional equivalent of a complete denial of care," but Plaintiff needs to provide more factual allegations in support of his claim.

## C.  Personal Participation

An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based.  *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006); *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997).  Conclusory allegations of involvement are not sufficient.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in

the body of the complaint and to include in the body a description of the acts taken by each defendant that violated plaintiff's federal constitutional rights.

Mere supervisory status is insufficient to create personal liability. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008) (supervisor status is not sufficient to create § 1983 liability). An official's liability may not be predicated solely upon a theory of respondeat superior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Gagan v. Norton*, 35 F.3d 1473, 1476 FN4 (10th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995). A plaintiff alleging supervisory liability must show "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010), *cert. denied*, 563 U.S. 960 (2011). "[T]he factors necessary to establish a [supervisor's] § 1983 violation depend upon the constitutional provision at issue, including the state of mind required to establish a violation of that provision." *Id*. at 1204 (citing *Iqbal*, 129 S. Ct. at 1949).

The allegation that an official denied a grievance or failed to respond to a grievance is not sufficient to show personal participation. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (A "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."); *see Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012).

Plaintiff names Warden Hudson and Ronald Davis, the Director of the United States Marshal Service, as defendants. Plaintiff does not indicate how the defendants have personally participated in the alleged violation of his constitutional rights. Plaintiff appears to be relying solely on the supervisory status of both of these defendants. Both are subject to dismissal.

Plaintiff also names Michael Naller, Regional Director of the Bureau of Prisons, as a defendant. His asserted basis for Naller's liability is that he failed to respond to grievances and complaints, thus "aiding and abetting" the violation of Plaintiff's rights. (Doc. 1-1, at 12). As explained above, such allegations are not enough to show personal participation. Naller is subject to dismissal.

Further, Plaintiff states that Defendant Clark is "responsible for all medical personnel's actions." (*Id*. at 12-13). This is nothing more than a claim of liability based on his supervisory status. Plaintiff also claims that Clark was negligent. Negligence is not sufficient to establish the requisite deliberate indifference. Similarly, Plaintiff alleges that Defendant Grecco is "responsible for the actions of the case managers and counselors in A cellhouse" and failed to answer grievances. (*Id*. at 13). Clark and Grecco are subject to dismissal.

Last, Plaintiff's allegations about the defendant identified as "Psychologist Dr. B." are not sufficient to establish personal participation. Plaintiff claims that he "made her aware during a hunger strike that the conditions we were undergoing were cruel and unusual," and she did nothing after saying she would take action. (*Id*. at 16-17). Plaintiff does not allege that Dr. B. personally participated in any violation of his constitutional rights. She is subject to dismissal.

**D.  No Physical Injury**

Plaintiff's request for compensatory damages is barred by 42 U.S.C. § 1997e(e), because Plaintiff has failed to allege an actual physical injury. Section 1997e(e) provides in pertinent part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

## IV.  Response and/or Amended Complaint Required

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein.  Plaintiff is also given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein.[3]  Plaintiff is given time to file a complete and proper amended complaint in which he (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant.

If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient Complaint and may be dismissed without further notice.

## V.  Motions

Plaintiff has filed a Motion to Appoint Counsel (Doc. 5), arguing that he cannot afford counsel, needs an attorney to assist him, and has been unable to obtain counsel.

The Court has considered Plaintiff's motion for appointment of counsel.  There is no constitutional right to appointment of counsel in a civil case.  *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995).  The decision whether to appoint counsel in a civil matter lies in the discretion of the district court.  *Williams v. Meese*,

---

[3] To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint.  *See* Fed. R. Civ. P. 15.  An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it.  Therefore, any claims or allegations not included in the amended complaint are no longer before the court.  It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint.  Plaintiff must write the number of this case (23-3192-JWL) at the top of the first page of his amended complaint and he must name every defendant in the caption of the amended complaint.  *See* Fed. R. Civ. P. 10(a).  Plaintiff should also refer to each defendant again in the body of the amended complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances.  Plaintiff must allege sufficient additional facts to show a federal constitutional violation.

926 F.2d 994, 996 (10th Cir. 1991).  "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)).  It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to appoint counsel, courts must evaluate "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Hill*, 393 F.3d at 1115 (citing *Rucks*, 57 F.3d at 979). The Court concludes in this case that (1) it is not clear at this juncture that Plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not complex; and (3) Plaintiff appears capable of adequately presenting facts and arguments.  The Court denies the motion without prejudice to refiling the motion if Plaintiff's Complaint survives screening.

Also before the Court is a motion for order to show cause for a preliminary injunction and temporary restraining order (Doc. 6) filed by Plaintiff.  He seeks an injunction removing the defendants from their positions and restraining them from causing Plaintiff any more harm.

To obtain a preliminary injunction, the moving party must demonstrate four things: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of the equities tip in the movant's favor; and (4) that the injunction is in the public interest.  *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010).  "[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 356 F.3d 1256, 1260 (10th Cir. 2004).

Plaintiff's allegations do not establish that injury is certain and not theoretical, or more than merely feared as liable to occur in the future.  "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical."  *Heideman v. S. Salt Lake City,* 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation marks omitted).  A preliminary injunction is only appropriate "to prevent existing or presently threatening injuries.  One will not be granted against something merely feared as liable to occur at some indefinite time in the future."  *State of Connecticut v. Commonwealth of Massachusetts,* 282 U.S. 660, 674 (1931).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal.  *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). Moreover, a federal court considering a motion for preliminary injunctive relief affecting the conditions of a prisoner's confinement must give "substantial weight to any adverse impact on public safety" and on prison operation.  18 U.S.C. § 3626(a)(2).  Because preliminary injunctions and TRO's are drastic remedies—"the exception rather than the rule—plaintiffs must show that they are clearly and unequivocally entitled to relief." *Adrian v. Westar Energy, Inc.*, No. 11-1265-KHV, 2011 WL 6026148, at *3 (D. Kan. 2011) (citations omitted).

The Court finds that Plaintiff has not met his burden to make a heightened showing that entry of a preliminary injunction is warranted; he has not demonstrated a likelihood of success on the merits such that his right to relief is clear and unequivocal.

**IT IS THEREFORE ORDERED** that Plaintiff is granted until **September 25, 2023,** in which to show good cause, in writing, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **September 25, 2023**, in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Appointment of Counsel (Doc. 5) is **denied** without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's Motion requesting injunctive relief (Doc. 6) is **denied**.

The clerk is directed to send § 1331 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated August 25, 2023, in Kansas City, Kansas.**

S/  John W. Lungstrum
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**